## R. P. BOLLING *vs.* CHURCH ANDERSON & others.

### April Term, 1873.

WRIT OF ERROR CORAM NOBIS, OLD PRACTICE.—Previous to the Code, application for a writ of error *coram nobis* was made in open court by petition stating the reason why defense was not made when the judgment was rendered, and showing a meritorious defense, and the sufficiency of the reason given was tested by motion to dismiss the petition or demurrer thereto, and the sufficiency of the assignment of errors by a plea of *in nulla est erratum ;* and if the sufficiency of the errors was conceded or adjudged, issue might be taken upon their truth, and tried as in other cases.

SAME, NEW PRACTICE.—Since the Code, the rulings seems to be that the assignment of errors should embrace the reasons for the application, as well as the grounds of defense, and that a general demurrer to the whole assignment will be good if the reasons assigned are insufficient; and, a *fortiori*, if both the reasons for the application and the errors assigned are insufficient.

SAME, GROUNDS FOR.—The falsity of the sheriff's return of the service of a writ, or notice, is not a ground for a writ of error *coram nobis*.

SAME, DEFENSE.—It is no defense to a judgment final upon a garnishment on a firm, that the garnishee was not a member of the firm when notice of judgment *nisi* was served; nor, that neither the defendant nor the firm were indebted to the judgment-debtor at the time of the service of the garnishment notice; nor that the garnishment notice was directed to the firm, if actually served on the defendant.

SAME, IRREGULARITIES.—The irregularities in the garnishment proceedings, such as the misspelling of names, are, it seems, not the subjects of a writ of error *coram nobis*.

SAME, IN CHANCERY.—*Semble* the writ of error *coram nobis* lies in chancery only upon proceedings of a legal character, conducted in legal form.

*G. M. Fogg, Jr.*, for creditor.

*T. W. Turley*, for garnishees.

THE CHANCELLOR:—Under an execution issued in this cause, in favor of Church Anderson administrator for the use of *F. S. Davis* v. *R. P. Bolling*, to Shelby county, the sheriff of that county directed a garnishment notice to Blanfill & Co., requiring them to appear at this court on the 1st Monday of November, 1867, and answer as garnishees such questions as might be asked in relation to the money, property, or effects of the defendant Bolling in their possession, etc. The return of the officer on this garnishment is in these words interlined as here copied : " Executed by delivering a copy of this notice to the partner of Blanfill and the bookkeepers of Blanfeld & Co. September 23d, 1867."

On the 13th of November, 1867, a decree was rendered by this court in said cause reciting the issuance of the execution, and that it was " executed by serving garnishment upon W. H. Turley, a partner of Blanfill & Co., of Memphis, Tennessee, " that he had failed to enter his appearance as required, and it was ordered that conditional judgment be entered against said " W. H. Turley, a partner of Blanfill & Co.," for $3304.86, the amount, etc., " that notice issue to said Blanfill & Co. returnable to the 1st Monday of December, to appear and show cause why said judgment should not be made final."

On the 21st of November, 1867, process issued to the sheriff of Shelby county, commanding him to summon " Joseph Banfil and W. H. Turley, partners under the firm name of Jo Banfil & Co., to appear on the 1st Monday of December, 1867, and show cause," etc.

This process, although marked on the back as issued, seems not to have in fact gone out of the office.

On the 11th of January, 1868, similar process in all respects was issued, except that it required the parties summoned to appear on the 1st Monday of February, 1868. The return thereon is in these words : "Executed on Joe Bamfill & Co by reading the within to them."

On the 4th of May, 1868, a decree was entered reciting the judgment *nisi* of November 13th, 1867, "against Joseph Banfil & Co. as garnishees, which firm is composed of Joseph Banfil and W. H. Turley," that *scire facias* issued "returnable to this the April term of this court for said Banfil & Co. to show cause," etc., which is returned "as served upon said Banfil & Co ;" that said Banfil & Co. had failed to appear and show cause ; it is therefore ordered, adjudged and decreed that the conditional judgment be made final, and that execution issue for etc., "against said firm of Joe Banfil & Co."

On the 7th of November, 1868, W. H. Turley filed his petition in this court for a *supersedeas* of the execution issued on the foregoing judgment, and for a copy to be served on the plaintiffs in the execution with notice that on the 1st Monday of April next thereafter (being the first day of the next term), he would move for a writ of error *coram nobis.* On the 5th of April, 1869, the said Turley, by his solicitor, did in open court apply for said writ of error *coram nobis,* "which is granted and ordered to issue in conformity with the said petition."

On the 13th of April, 1869, the said Turley filed an assignment of "errors in fact" as follows :

1. The conditional judgment of the 13th of November, 1867, was rendered without notice being served upon him of the intention to take it.

2. At the time *scire facias* was awarded against Banfill & Co. the 13th of November, 1867, the said W. H. Turley was not a member of the firm.

3. The final decree of the 4th of May, 1868, was rendered without any notice to him. No *scire facias*, notice, or other process of any kind was served upon him in the case previous to that date.

9

4. At the time the *scire facias* purports to have been executed on Joe Banfill & Co. 18th January, 1868, the defendant was not a member of the firm.

5. At the time of the service of notice of garnishment on the 23d of September, 1867, neither the defendant, nor the firm of Jo Banfill & Co. were, in point of fact, indebted to said Bolling in any amount whatever.

6. The garnishee notice was directed to Banfill & Co., and not to this defendant, and was not notice of intended judgment against him in his individual right; so, the judgment was without notice that any such judgment would be asked for or taken.

On the 16th of June, 1870, a demurrer was filed to the assignment of errors upon the following grounds:

1. The petitioner will not be permitted to deny the return of the sheriff of the 23d of September, 1867, that the garnishment was served upon him as a partner of Banfill & Co.

2. The dissolution of the partnership between petitioner and Jo Banfill after the conditional judgment did not affect the right of the defendant, upon the notice to the members of said firm of Jo Banfill & Co. to proceed to final judgment against either or all of them.

3. The petitioner is again bound by the return of the sheriff to the effect that the *scire facias*, upon which the final decree was taken, was served upon the petitioner, his remedy in this case as in the other instance, if any, being against the sheriff for a false return.

4. The fact that the *scire facias* directed the sheriff to summon "Joseph Banfil and W. H. Turley," partners under the firm name of Jo Banfil & Co., was returned "executed on Jo Banfil & Co. by reading the within to them," is such a notice to the petitioner as makes the judgment binding on him, even though the fact be that he had then dissolved partnership with the said Jo Banfil.

By the Code, § 3110, it is provided: "Any person aggrieved by the judgment of the county, circuit or chancery court, by reason of a material error in fact, may reverse the

same upon writ of error *coram nobis*, as herein provided."

At common law the writ of error *coram nobis* was exclusively confined to proceedings in the law courts, and was of very limited application. Almost the only errors mentioned in the books as being subject to correction in this mode, are that the defendant in the orignal suit, being under age, appeared by attorney; that a *feme* plaintiff or defendant was under the disability of coverture when the action was commenced; and that the plaintiff or defendant died before verdict or interlocutory judgment.

At an early day in this state, owing to the fact that judgments by motion were allowed by statute to be taken without notice, it was found that some mode of proceeding, other than a bill in chancery, was necessary to prevent injustice, and to give a party, who had a meritorious defense, an opportunity to make it. The common law writ of *audita querela* was the remedy provided by the common law nearest to the remedy needed. Bouv. Inst. § 3317; W*endell* v. *Eden,* 2 Johns. Cases 258; *Smock* v. *Dade,* 5 Rand. 639. But, either owing to its cumbrous or inadequate machinery, or for some other reason not explained, our courts held that writ to be obsolete, and extended the writ of error *coram nobis* to meet the evil. *Wynne* v. *Governor,* 1 Yer. 150. The fact that either party may demand a trial by jury in chancery and that the remedy by motion without notice has been extended to the county and the chancery court upon process issued from those courts against the sheriff and other officers for neglect of duty, and upon notes taken for property sold under the orders of these courts, is the reason why the benefits of this writ have been extended by the Code to the suitors in these courts. The remedy given by the writ, under the Code, does not extend, it seems to me, to any proceedings in the chancery court except such as are of a legal character, that is such as belong properly to the legal forum, and are conducted according to legal forms. The point is not necessary to be decided in this case, and I merely suggest this as my present impression.

Previous to the Code, the practice of the courts of law seems to have been to require the application for a writ of error *coram nobis* to be made in open court by affidavit or petition, stating the *reason* why the applicant did not make defense when the judgment complained of was rendered, and showing a meritorious defense. If the opposite party supposed the *reason* given to be insufficient, the mode of testing the point was by motion to dismiss the petition, or demurrer to it. *Bigelow* v. *Miss. Central & Tenn. R. R. Co.*, 2 Head. 625 ; Hist. of Law Suit, § 544 ; Hicks' Manual, § 333. If the petition was not resisted, or was sustained by the court, the petitioner was then required to make a formal assignment of errors in the nature of a declaration, stating the errors of fact upon which the party relied to reverse the judgment. *Crawford* v. *Williams*, 1 Swan, 343. According to this practice, the reason why the party was entitled to the writ, and the defenses to the recovery of judgment against him upon which he relied, were kept separate and distinct. The sufficiency of the first was tested by motion to dismiss the petition, precisely as the sufficiency of the ground alleged for a *certiorari* is tested ; the sufficiency of the second was by plea of *in nulla est erratum* to the assignment of errors, which admitted the fact to be as alleged, and insisted that in law there was no error. And if the sufficiency of the assignment was conceded, the defendant might yet take issue upon the errors of fact assigned, in which event issue was joined, and the facts tried as in other cases.

Since the Code a different practice has grown up, which may, perhaps, be traced to a misconstruction of the language of § 3111 of the Code, aided by a paragraph in Judge Caruther's History of a Law Suit, § 540, in commenting on that section. In that paragraph, this very able and accurate writer says : "If the judge considers the facts sufficient to warrant it, he orders the clerk to issue the writ." But he explains in the very same section that no writ of error ever issues in practice, and the Code only speaks of it as a name given to a proceeding to reverse a judgment for errors of

fact. This is true. The revisers of the Code intended to embody the law of this writ as it then stood under the decisions of the supreme court, without changing it in the least except to authorize the application for the writ to be made at chambers as well as in open court. But the practical construction put upon the language used seems to have been to separate the petition from the writ. In other words, to do away with the old purpose of the petition, and confine it simply to the statement of facts upon which to ground an application for a *supersedeas*. In the case before us, the petition, singularly enough as it seems to us who were brought up under the old practice, does not even ask for a writ of error. It prays that the defendants be made parties to the petition, " and have notice with copy hereof that petitioner will move your honor in open court on the 1st Monday in April next for a writ of error *coram nobis*." And the writ was applied for and granted in open court, and assignment of errors at once made.

The effect of this change has been, as it seems to me, whether the Code is to be held responsible for it or not, to produce some confusion. Under the old system, the trial of the sufficiency of the *reason* for applying for the writ was preliminary to the trial upon the assignment of errors, and independent of it altogether. Now, the two are blended together. The assignment of errors in this case, for example, contains the reason why the petitioner thinks himself entitled to the writ, namely, want of notice, and the grounds upon which he thinks the judgment should be reversed, namely, that neither he nor Banfill & Co. were indebted to Bolling when the garnishment was served. The difficulty, upon this mode of practice, is to know how to test the sufficiency of the two thus blended. The defendant in this case has filed a general demurrer to the whole assignment, but his causes of demurrer relate exclusively to those assignments which state the *reason* why the petitioner thinks he should be permitted to make defence. To allow the demurrer to prevail because these assignments are not sufficient, while the

demurrer concedes the validity of the errors assigned on the merits is somewhat anomalous. Still, there is no insuperable reason why the end sought should not be reached in this way. The rule, as we all know, is that a demurrer cannot be good as to a part which it covers, and bad as to the rest, but must stand or fall altogether. Story Eq. Pl., § 433. But a plea, we also know, may be bad in part, and not in the whole; and if it covers too much the court will allow it to stand for the part which it properly covers. Story Eq. Pl., § 692. We have only to extend to the demurrer the rule which governs the plea, and the practice under consideration would be normal. And this is, in effect, what has been done by our supreme court in the decisions made in *Brandon* v. *Diggs*, 1 Heisk. 472; and *Crouch* v. *Mullinix*, Id. 478. The first of these decisions holds, in effect, that the assignment of errors should embrace the grounds of the application and the grounds of defense, and that a general demurrer to the whole will be sufficient to dismiss the writ, if the former grounds as alleged are insufficient to authorize the opening of the case for defense. The second of these decisions seems to hold that the truth of the reason relied on for the application is a fact to be inquired of by the jury, though the point is not directly ruled. These decisions are, of course, as far as they go, binding upon me, and as both parties to this case have acted upon the practice sanctioned by them neither can object to my following their example.

If, then, the grounds set forth in the assignment of errors why the petitioner should now be permitted to make defense are insufficient in law, the demurrer must be sustained; *a fortiori*, if the demurrer be good as to the whole assignment. Let us see, now, what are the errors assigned, and whether any of them are valid in law.

The demurrer covers the first four errors assigned, the two last having been since added, but they have been permitted to be filed, with leave to the defendant to demur to them if he sees proper.

The first and third assignments are that the conditional

judgment and the final judgment were rendered without notice.   The ground of demurrer is that the petitioner cannot be heard to deny the return of the sheriff.   The return on the garnishment is that it was executed upon the petitioner, naming him.   The return to the *scire facias* is that it was "executed on Jo Banfill & Co. by reading it to them," the sheriff being directed in the writ to summon the petitioner and Jo Banfill as partners under that firm name.   It is obvious that both returns are explicit of service on the petitioner.   And the supreme court seem to have expressly held in one case that the falsity of such a return was not a ground for a writ of error *coram nobis*.   *Shepard* v. *Brown*, Brownsville, 1868, cited in King's Dig., § 5670.   And this is in accord with analogous decisions.   *McBee* v. *State*, Meigs, 122 ; *McCully* v. *Malcolm*, 9 Hum. 193 ; *Ridgway* v. *Bank of T.*, 11 Hum. 525 ; *Williams* v. *State*, 2 Sneed, 172.

Besides, our decisions are uniform that nothing can be assigned as error which directly contradicts the record, as, for example, where the record shows that the parties appeared by attorney, it is not competent to deny the fact of such appearance.   *Carney* v. *McDonald*, Jackson, 1872, 1 South. L. Rev., p. 757.

The argument of the petitioner's counsel in this connection, that the demurrer admits the fact that there was no notice, is more ingenious than solid.   Under the old practice, the court could upon a motion to dismiss the petition, or demurrer to it, look to the entire record to see how far the reason assigned accorded with the fact, and this right must still be conceded to it under the new practice.   Besides, the only way to ascertain whether the error assigned contradicts the record is to look to the record.   And this, it has been held, may be done in the analogous case of a demurrer to a plea to a *sci. fa.* of no service of the original process.   *McBee* v. *State*, Meigs, 122.

The demurrer is, therefore, well taken to these assignments.

The 2d and 4th assignments are, that at the time *sci. fa.* was awarded against Banfill & Co. on the 13th November,

1867, and when it purports to have been executed, the petitioner was not a member of said firm. It is obvious that there is nothing in this ground. The garnishment was, of course, effective from the time of notice, and bound the property from that date, Code, § 3090, and fixed the character in which the garnishees were to be liable from that date. If it were otherwise, parties might avoid the effect of the garnishment by changing their relations, which would be contrary to all rules. The demurrer is, therefore, well taken to these assignments, and covers the whole ground of the original assignment.

The 5th assignment, which goes to the merits, is also fatally defective. It states that at the time of the service of notice of garnishment, neither petitioner nor Banfill & Co. were, in point of fact, "indebted to said Bolling in any amount whatever." But the garnishment not only binds any indebtedness of the garnishees to Bolling, but "all property, debts, and effects of the defendant in the possession of the garnishee." An assignment, therefore, which only negatives one of the effects of the garnishment is no defense to it even if true, and is clearly demurrable for insufficiency.

Nor is there anything in the 6th assignment. The fact that the garnishment was directed to Banfill & Co. would, if executed upon the petitioner, justify a judgment against him individually as a member of that firm, for that is the form of the judgment *nisi*. The judgment upon notice to one partner may bind all. *State* v. *Linaweaver*, 3 Head, 51. And it certainly binds the particular partner. Moreover, if there be error in this regard it is error of law not fact.

The irregularities which undoubtedly exist in the garnishment proceedings in this case are not brought in question by the assignment of errors, nor could they be perhaps, by this mode of redress. The remedy is by writ of error to the appellate court.

The demurrer must be sustained and the writ of error dismissed.

NOTE.—This decision was, upon appeal, affirmed.